Pope v. Wells is our fifth case for argument today. Mr. O'Brien. May it please the Court. Twenty-eight years ago, a Milwaukee County jury found Robert Pope guilty as a party to the execution-style murders of Joshua V. Lead and Anthony Gustafson. His trial was fair. Its result was reliable. How can you tell? Because Mr. Pope has not argued that anything went wrong at his trial, and he does not proclaim it. How could he tell? He has not. He could tell by examining what's left in the record, talking to his client, reviewing whatever documents, police reports, whatnot, what transcripts are there, including the preliminary and the sentencing. Anne. How can he possibly tell without a trial transcript? Doesn't, you know, the Paris de Lyon rule account, or does it account for the passage of time? Here, you know, we have a situation where the trial transcript is gone forever. But by the time that fact was ascertained, you know, 20 years had passed since the trial. You know, it's one thing to say a defendant can be expected to still identify appellate issues a year or two after the trial. Isn't it a very different task 20 years later when everyone's memory has faded? It's a more difficult task, I will give you that. But it's certainly something. What the state court said here is the effort has to be made, and the effort wasn't made. And the Paris de Lyon procedure requires at least the effort. Who cares that it is undisputed on this record that two of Pope's constitutional rights were violated, the constitutional right to effective assistance of counsel and the constitutional right to a meaningful appeal. At that point, the state has to show beyond a reasonable doubt that the violations were harmless. And it seems to me you're just trying, and indeed the Supreme Court of Wisconsin, is just trying to push the burden onto Pope when it's the state's obligation under established law to show harmlessness beyond a reasonable doubt. And what the state courts are saying is that he may very well prevail on that basis in state court under the Paris de Lyon procedure. I did not see the Supreme Court of Wisconsin find that the state has established harmlessness beyond a reasonable doubt. No, because we haven't gotten to that point. Again, the Paris de Lyon procedure has to be invoked. That's what the Court of Appeals and the Supreme Court said. I do not see how a state can say we're not going to follow the Supreme Court's holding about where the burden lies or what it is until somebody has shown something to our satisfaction. This is a decision of the Supreme Court of the United States about who has the burden and what that burden is. But again, the appeal was reinstated, and then the question is once you have an appeal, it's a worthless appeal to reinstate something where nobody has a transcript or a memory. Mr. Pope, even if Mr. Pope were a lawyer, which he's not, trying to remember the details of a trial 20 plus years later is entirely ridiculous. It doesn't happen. But the appeal was... Judge Rovner, I'm sorry. I didn't mean to interrupt you. No, no, no, no. I interrupted you. I'm sorry. Did the state argue in the state court proceedings that there are ways for Pope to reconstruct the state court record without a trial transcript? I think we have a question of forfeiture, unless you can convince me. In the reply brief, I pointed out what is there, what can be utilized to try at least to reconstruct, and then if that fails under the Perry procedure, then he wins reversal. I don't understand why he has the tiniest burden under the decisions of the Supreme Court of the United States saying that the state must show the error harmless beyond a reasonable doubt. How does that translate to any burden on Pope to lift a finger? Again, this is a... The Constitution, because his attorney did not file a notice of intent, he was in effect weak granted. The remedy from cases like Flores v. Ortega and Idaho v. Garza is reinstatement of the right to a direct appeal. After that appeal was reinstated, the parties learned that the transcripts could not... And the state must show beyond a reasonable doubt that that remedy is adequate, and it hasn't even tried. Well, it's hard to say that the remedy is inadequate if Pope hasn't tried to utilize it. But we also have a circuit court finding that reconstruction is impossible, and I don't see... That finding hasn't been disturbed on this one. But that finding was not based on any evidence. It was just based on an assumption that, well, there's no transcript, therefore reconstruction is not possible. But it's a finding, is it not? You know, Pope was pro se for nearly 20 years. I think he's been in for about 30 at this point. Assuming he did not have the funds to pay for transcripts for himself, was there any way for him to make a request for transcripts without being represented by the public defender? I mean, this really is a catch-22 situation. Well, he... You know, the problem here is that at the outset, when he requested an extension of time to file the notice of intent, this was 14 months after the sentencing, long after the time to file a direct appeal expired. He did not explain, when moving for an extension, why he waited so long. Look, Pope was in prison. Bacchus, you know, had to sign the stipulation representing that he would file the notice of appeal. Pope certainly had a reasonable expectation that Bacchus would do that. I mean, at what point do you think exactly did the duty shift from Bacchus to Pope to keep track of what was going on with the appeal? I mean, when did he have this duty to start inquiring? Was it three months, six months, nine months? When? Well, all I can say is that the Court of Appeals said 14 months was too long without explanation. And that is why... We did after... The state violated the Constitution by not providing him with an effective lawyer and by not providing him with an effective direct appeal. I hope it's clear. It seems to me that we have a decision of the Supreme Court of Wisconsin that is simply defying the Supreme Court of the United States. And you're defending it. It's almost inconceivable. You remember how well your argument was received in the Carter case three years ago when you were defending an inexcusable four-year delay. Now we have an unfathomable 28-year delay. What is going on in the state of Wisconsin? The delay came about... We... You're second-guessing the decision of the Court of Appeals in 1997 that basically said he forfeited the right to appeal because he didn't provide an explanation. Then, when he filed the night petition specifically alleging why... In detail, why he didn't act earlier. And then the Court of Appeals ordered an evidentiary hearing. And there was an evidentiary hearing where he produced evidence where, for the first time, he said he wrote letters to his attorney. He wrote a letter to the public defender. That was the first time he ever provided that evidence. And at that point, the trial court made findings of fact stating that he had been trying to get his attorney to act. And at that point, the state and the defense stipulated to reinstatement of his right to pursue direct relief. And after that point, it was learned that the transcripts were no longer available. And at that point, the Court of Appeals said, Okay, you may prevail, but you've got to at least try to follow the period procedures, which is the alleged sum, arguably reversible error occurred at your trial. But I hope you see the problem. You have somebody, two of whose constitutional rights were violated. The state has not tried to show that the violations were harmless beyond a reasonable doubt. It hasn't even tried, and it insists that the victim of these violations jump through more state law hoops, rather than applying the rather clearly established law of the Supreme Court of the United States. It's a problem. I don't see how you can fail to see that. It's a problem. Again, we're talking about, I guess I look at it as, what if this had happened on a direct appeal where we have much less of the, let's say, one year. And for whatever reason, the court reporter destroyed their notes. Then we might not have a violation of the Constitution to begin with. Well, we still have an effect. We might have a violation of state law. The fact that I have to say this multiple times is just mind-boggling. I don't get that you don't get it. I don't get that the Supreme Court of Wisconsin didn't get it. It is mind-boggling. And in light of what happened in the Carter case, the fact that you are here defending this is difficult for me to comprehend. Well, I'm not sure how Carter squares. That was the case where a public defender got 12 extensions of time to file a complaint. It took four years, and the Court of Appeals of Wisconsin persisted in sua sponte extending the time. And the state, through you, stood up and said there's absolutely nothing wrong with a four-year delay. Well, here we have a 28-year delay. It's astounding. But, again, none of this came to light. Again, you're basically asking that the 1997 order be overturned. And the Wisconsin Supreme Court said that was the law of the case because he didn't provide any reason for waiting 14 months. Subsequent law makes it clear that if the attorney does not file a notice of appeal, then he's ineffective, and the remedy is reinstatement of the right to an appeal. The right to appeal was reinstated in 2016. In 2017, the parties learned there's no transcript. So now the question is, what is the remedy? Do we grant him a new trial without ever alleging any error occurred and without proclaiming actual innocence? Or do we at least ask him to require him to go through the Perry process, which he may very well prevail on? If he can show that, no, it's not possible to allege error, I've tried. The problem here is he hasn't tried to utilize it. He came here first. And I'm sorry, but I don't know of any clearly established Supreme Court precedent that says you get a new trial because the transcript is missing. And I don't know why the Perry procedure is presumed inadequate. It certainly could be adequate in this situation if Mr. Perry shows that because of the passage of time, even though he was late in specifying why he delayed in 1997, that he cannot even allege error and he cannot reconstruct the record. Our position is simply that the state should get the first crack at that, that you don't come into federal court and claim a federal right to an automatic reversal due to the lack of transcript that is not clearly established and claim that a state procedure that you didn't even try to use is inadequate. To me, that is not... Well, you know, your reply really relied very heavily on the criminal complaint that was filed against Pope. But the criminal complaint is the state's own untested, self-serving version of an offense. It's not a substitute for a record of what the witnesses actually said at trial or what transpired at trial. No, but it gives you a pretty good idea of what they likely said. The criminal complaint is also under oath, and it's rare to see a criminal complaint this detailed as to what happened. And there was also testimony at the preliminary hearing that was also under oath. I see my time is up. Thank you, Mr. O'Brien. Ms. Cornwall. Good morning, Your Honors. I'm Andrea Cornwall of the Wisconsin State Public Defender's Office, and I represent Mr. Pope. This case has a long procedural history, but the legal issues are not complex. Everything that occurred in this case flowed from one single event, trial counsel's abandonment of Mr. Pope in 1997 following—I'm sorry, 1996, following his sentencing in state court. It's undisputed that trial counsel failed to file the required notice of intent that would have initiated his appeal. Can you shed light, please, on what exactly happened during the 14 months between Mr. Pope's sentencing and his first motion to the Court of Appeals in alerting them to Mr. Backey's failure to file the notice of appeal? Well, I'm aware, of course, that Mr. Pope wrote at least two letters to Backey's about his appeal, that the family was calling, etc. And the transcripts in July 1995, I gather they were both within the 20-day period to appeal. Do we know what else occurred after those letters were sent? Yes, Your Honor. The circuit court made factual findings at a hearing that occurred after the Wisconsin Court of Appeals remanded the case to the circuit court— Right. —pursuant to Mr. Pope's pro se habeas petition in the Court of Appeals in Wisconsin. And those factual findings did include, as Your Honor indicates, that Mr. Pope had sent two letters to Attorney Backus within the 20 days inquiring what was going on with the appeal, and that his family and he were attempting to call Mr. Backus with no response. In addition, there is evidence in the record that reflects that Mr. Pope wrote to the Wisconsin State Public Defender's Office in August of 1977, asking what was going on with his appeal because he had not heard from Attorney Backus. Right. And our office wrote back to him indicating that we had not been notified that he had sought to appeal, so we had not been sent the materials, and gave him instructions regarding how to request reinstatement from the Court of Appeals. And he immediately did that. He filed his extension motion with the Court of Appeals, which the court denied, indicating that he did not sufficiently explain what they deemed a 15-month delay, which was actually 14 months. Does that answer Your Honor's question? Well, I wondered if anything else happened, you know. Not in this record, Your Honor. Not that I'm aware of. My presumption is that Mr. Pope, while in prison, assumed that his lawyer had followed through on filing the notice of intent and that appeals take time. And would I be correct in thinking that the lack of a trial transcript imposes an obstacle not only to a direct appeal of Mr. Pope's conviction, but also to any potential post-conviction proceeding that might pursue a claim of ineffective assistance in the conduct of the trial, for example? Correct, Your Honor. And actually, in Wisconsin, the direct appeal process does include post-conviction. It's a little bit of an anomaly amongst state courts that our post-conviction process does actually start prior to filing the notice of appeal in the Court of Appeals. So this is Mr. Pope's direct appeal, and the post-conviction process is part of that appeal, including allegations of ineffective assistance in trial counsel. So does that answer Your Honor's question, or did you have a follow-up? No, I'm questioned out at this point. Well, I have one for you, because you also have this point at which you argue the case can be decided as an unreasonable determination of the facts. That's correct. Can you take us through that very briefly? Yes, and that is based on, and I would note that the district court below noted in a footnote that it could also decide this case on the unreasonable determination of facts, and that is because the majority of the Wisconsin Supreme Court unreasonably attributed the loss of the transcripts to Mr. Pope because he did not order them himself after he realized that he was abandoned by his trial counsel, and that he should have ordered them himself, and that he should have, as the majority put it, not sat on his rights in waiting for 14 months before filing his very first extension motion. So the unreasonable determination of the facts, I think, is the majority's laying the blame at Mr. Pope's feet for the constitutional violation, which in my view and in the dissent's view in the Supreme Court majority as well as the district court's view, it squarely lays at the state's feet because his Sixth Amendment right to counsel was violated by his trial counsel's abandonment, which directly flowed into the loss of the transcripts. Had counsel filed that notice of intent, it would have triggered Wisconsin's appellate process. It would have triggered the obligation under Wisconsin statutes for the clerk to send to the public defender's office the materials. We would have appointed counsel. We would have ordered the transcripts all in a timely fashion. That didn't happen because Attorney Bacchus failed to file the notice of intent, and that is a per se abandonment. So Judge Easterbrook is correct. There is a Sixth Amendment violation here. There is also a Fourteenth Amendment violation here because Mr. Pope is being denied his right to a meaningful appeal, and I do not believe that my colleague here has addressed the constitutional violations at all. I would also note that the U.S. Supreme Court, as well as this court, has clearly held that where there is a procedural default due to ineffective assistance of counsel, the government assumes that responsibility, not the defendant. And that's under Murray v. Carrier and Coleman v. Thompson. This court has also recognized that in Betz v. Litcher. Again, it's our position, and as agreed by the district court below, that it's counsel's failure that caused the transcript loss, and that cannot be laid at Mr. Pope's feet. He cannot be blamed for failing to have initiated his own appeal. He was entitled to counsel. He did not waive his right to counsel, and the fact that he may have waited 14 months before filing the first extension request, which the Court of Appeals of Wisconsin denied, does not alleviate the state's responsibility in remedying that violation. And I would also note, as to the transcripts and the state's assertion that Mr. Pope hasn't done enough, as a result of the loss of transcripts, he's been denied his right to a meaningful appeal. A meaningful appeal is constitutionally required under the 14th Amendment. That's pursuant to Douglas v. California. It also includes the trial transcripts or their substantial equivalent. Nothing that the state has indicated would be a substantial equivalent. And I would note, Judge Rovner, that the state has never suggested below that the record could be reconstructed beyond a reasonable doubt, which is, in fact, the standard. And our district court, of course, found that reconstruction is not possible without a trial transcript. So, you know, yeah. And that's correct, Judge. And the state never challenged that below. They never suggested that the record could be reconstructed. And the standard in the state court under Perry and de Leon is the record would need to be reconstructed beyond a reasonable doubt. And they simply did not suggest that. So I would agree that there is a question of forfeiture here. They also never challenged the circuit court's finding that reconstruction is impossible. That has never been challenged. My colleague here also indicates that the remedy has been provided to Mr. Pope by simply reinstating his direct appeal rights. But that does not satisfy his right to a meaningful appeal. It just doesn't provide a sufficient remedy because no transcripts can be produced. And I would agree with you, Judge Rovner, and you stole a little bit of what I was going to argue here, is this is a catch-22 situation for Mr. Pope. His lawyer abandoned him. And as a result, he has no transcripts. And now the state has come in and said, well, you don't have any transcripts. Too bad. You still have to allege some error in your trial and proceed with an appeal without those transcripts. So I disagree that Mr. Pope had any duty to order those transcripts or to try to reconstruct through the criminal complaint or, you know, any of the other suggestions from the state's reply brief. And I would note that the state in its reply brief references the circuit court clerk's handwritten docket that indicates the names of the witnesses at trial. That document is actually not in the record. The circuit court specifically denied, or I'm sorry, the district court specifically denied the state's motion to supplement the record with that docket entry. Yet the state repeatedly referenced that in the latter part of its reply brief. But in any event, I believe all of those references are simply irrelevant because there's no way that we can establish any even arguable error from a criminal complaint and a list of witnesses that testified at trial. We are talking now about a trial that occurred almost 30 years ago. And I would also just like to touch on the independent and adequate state ground. It's our position that the district court correctly found that the majority's extension of the Perry de Leon procedure to Mr. Pope's situation was not an independent or adequate state law ground that precludes federal habeas review. This court found in page... It's certainly an independent state ground. It has nothing to do with the Supreme Court's rulings. I'm sorry? It's an independent state ground. It is not something that rests indirectly on federal law. It's independent. Your position is that it's not adequate. That's correct, Your Honor. My position really does rely more on the adequacy of it. And as this court found in page V. Frank, a state procedural ground is not adequate if it sacrifices constitutional rights. And the state cannot enact a procedural rule that absolves it of responsibility for its own constitutional violations. In addition, that procedure was not firmly established nor regularly followed when the majority invoked it against Mr. Pope. The Wisconsin courts had never before applied that procedure against a defendant who had lost all of the transcripts in his trial. So Mr. Pope could not have anticipated that the Wisconsin courts would apply that against him. And I would just note in the de Leon case, that involved a court trial of which 15 minutes of the testimony was missing. And in that case, within I think several months, perhaps a year of that conclusion of that trial, the court was able to reconstruct that record by recalling the witnesses and reproducing the 15 minutes of trial. In the Perry case, that was a multi-day jury trial. About an eighth of the trial, several witnesses and the closing arguments were lost through no fault of the defendant. I believe the court reporter's notes were lost in the mail. So one-eighth of that trial was missing. And nonetheless, in that case, the Wisconsin Supreme Court found that record could not be reconstructed. And that was within several years of that trial having occurred. And Mr. Perry, in that case, was granted a new trial. And that was simply one-eighth. But there are no cases in which the Supreme Court of Wisconsin has applied the Perry de Leon rule when all of the transcripts are missing. So it's our position, Your Honors, that this case exemplifies an extreme malfunction of Wisconsin's criminal justice system that warrants the extraordinary remedy of a federal habeas writ. And the state of Wisconsin cannot escape the violation of Mr. Pope's Sixth Amendment rights, which resulted in the deprivation of his Fourteenth Amendment right to a meaningful appeal by blaming him for the loss of the transcripts in this case. We would ask the court to affirm the district court's grant of habeas relief. And unless the court has any other questions, thank you. I appreciate your time. Thank you, Ms. Cornwall. And the court appreciates your willingness to accept the appointment and your assistance to the court as well as your client. You're welcome. The case is taken under advisement.